UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

FRED LEE DAVENPORT,

                      Plaintiff,

v.                                                   Case No. 24-cv-71-pp

LT. LUKAS ROBERTSON, *et al.*,

                      Defendants.

_____

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING PLAINTIFF'S MOTION TO PRESERVE EVIDENCE (DKT. NO. 7)**

_____

        Plaintiff Fred Lee Davenport, who is incarcerated at Columbia Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his amended complaint, dkt. no. 6, and resolves his motion to preserve evidence, dkt. no. 7.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

        The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 24, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $2.66. Dkt. No. 5. The court received that fee on February 13, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

Case 2:24-cv-00071-PP Filed 05/20/24 Page 2 of 14 Document 9

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 24, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff has sued fifteen defendants whom he alleges conspired to violate his constitutional rights after the plaintiff wrote a letter about his concerns with another incarcerated individual's safety, showed the letter to defendant Officer Timothy Hong and discussed it with him and gave the letter to defendant Lukas Robertson. Dkt. No. 6 at 2, 3 ¶¶1-3. Robertson allegedly issued the plaintiff a conduct report for this letter. Id. at ¶4. The plaintiff states that defendants Captain Eric Peterson and Corrections Program Specialist

3

Christopher Olson approved the conduct report and made "a recommendation." Id. at ¶¶5-6. Defendant Security Director Ryan Blount allegedly approved the conduct report and offered the plaintiff a disposition of 210 days "D.S." (presumably, disciplinary segregation). Id. at ¶7.

The plaintiff alleges that after he contested the conduct report, Hong served the conduct report on him along with his due process rights. Id. at ¶8. Defendant Kevin Pitzen allegedly was the hearing officer along with defendants Natasha Radtke and Rebecca Gardener. Id. at ¶9. The plaintiff states that he had his conduct report, the letter, Hong and a statement from Robertson as witnesses and evidence at the hearing. Id. at ¶10. Pitzen allegedly did not allow the plaintiff to ask certain questions of approved witnesses, and Hong allegedly lied on the record and then asked the plaintiff, "what makes you think I care about how a[n] inmate feels." Id. at ¶11. Defendant Radtke allegedly omitted Pitzen's inappropriate statement. Id. The plaintiff alleges that the hearing committee found him guilty of group resistance and petitions, and threats, and found him not guilty of soliciting an employee. Id. at ¶12. He allegedly was given "210 days DS adding A/C tracking." Id. The plaintiff states that he appealed to the warden, challenging the evidence and procedural errors, but the decision was upheld. Id. at ¶13.

The plaintiff alleges that he filed "an inmate complaint raising multiple procedural errors." Id. at ¶14. Defendant Rodney Sedovic, the complaint examiner, allegedly recommended dismissal "due to no procedural being raised, which was maliciously false." Id. at ¶15. The plaintiff states that defendant

Deputy Warden Michael Glass dismissed the complaint, electronically signing his name and falsely identifying himself as the warden. Id. at ¶16. The plaintiff allegedly appealed to defendant Emily Davidson, the corrections complaint examiner, "raising same claims adding concerns that Michael Glass was the topic of ICE but decided on it and falsely identified himself as the warden on an official statement document." Id. at ¶17. The CCE recommended dismissal of the appeal and defendant O'Donnell—with defendant Kevin Carr's authority—dismissed the complaint. Id. at ¶20.

The plaintiff alleges that defendant Mary Wesure, as advocate, and Sedovic, as complaint examiner, violated his constitutional rights along with perjury, false swearing and misconduct in a public office. Id. at 5. He states that "CR #343605 was a complete fabrication with all aforementioned defendants being aware of this." Id. at 6. The plaintiff alleges that the "act is libel and retaliation for plaintiff raising concerns of perceived staff misconduct against PIOC [person in our care] who's safety was a concern due to his WI DOC deemed STG [security threat group] affiliation." Id.

The plaintiff claims that the defendants have violated his rights under the First, Fifth, Eighth and Fourteenth Amendments. Id. at 3. He also raises state law claims of plain error, defamation (libel) and negligent infliction of emotional distress. Id. For relief, the plaintiff seeks compensatory damages and "removal of Conduct Report #343605 and its dispositions. Id. at 8.

C. <u>Analysis</u>

The court construes the plaintiff's complaint as alleging that the defendants conspired to retaliate against him because he wrote a letter expressing concerns about the safety of another incarcerated individual. He appears to allege that the retaliation included a fabricated conduct report, a disciplinary hearing at which he did not receive adequate due process and an inadequate response to the administrative complaint he filed after the disciplinary hearing. The plaintiff alleges that he was sentenced to 210 days' disciplinary segregation after he was found guilty of group resistance and petitions, and of threats. (He says he was found not guilty of soliciting an employee.) The plaintiff alleges that the defendants' actions were the result of a "governmental conspiracy of unprecedented magnitude[]" and that the defendants "all in collusion conspired, in whole or in part, by failing to perform their civil duties, to violate plaintiff's constitutional" rights. Dkt. No. 6 at 2.

To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." <u>Perez v. Fenoglio</u>, 792 F.3d 768, 783 (7th Cir. 2015) (quoting <u>Bridges v. Gilbert</u>, 557 F.3d 541, 546 (7th Cir. 2009)).

Whether the plaintiff's letter constituted speech protected by the First Amendment hinges on whether he "engaged in speech in a manner consistent with legitimate penological interests." <u>Watkins v. Kasper</u>, 599 F.3d 791, 794
6

(7th Cir. 2010) (citing Bridges, 557 F.3d at 551). The plaintiff alleges only that his letter concerned another incarcerated individual's safety and that he received a conduct report because of the letter. At this stage, the court will assume that the letter the plaintiff allegedly wrote concerning the safety of another incarcerated individual qualifies as First Amendment-protected activity. The court also will assume at this early stage that under the second factor of a retaliation claim, the plaintiff arguably suffered deprivations—fabricated conduct report, unfair due process hearing—likely to deter future activity. See Douglas v. Reeves, 964 F.3d 643, 646-47 (7th Cir. 2020) (quoting Surita v. Hyde, 665 F.3d 860, 878 (7th Cir. 2011) ("We apply an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity.")).

But the plaintiff has not alleged facts to support an inference that his letter was a motivating factor for the defendants' actions. See Iqbal, 556 U.S. at 678. The plaintiff has not plausibly alleged that his allegedly protected activity was a motivating factor behind the defendants' conduct. See Bridges, 557 F.3d at 546. In other words, he has not plausibly stated what leads him to believe that he was treated the way he was *because of* the protected activity. See Kaminski v. Elite Staffing, Inc., 23 F.4th 774, 777-78 (7th Cir. 2022). The complaint does not state a retaliation claim.

It is possible that the plaintiff is trying to allege that his due process rights were violated regarding his disciplinary hearing. An incarcerated individual challenging the process he was afforded in a prison disciplinary

7

proceeding must meet two requirements: (1) that he has a liberty or property interest that the state has interfered with; and (2) that the procedures he was afforded upon that deprivation were constitutionally deficient. Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007) (citing Rowe v. DeBruyn, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." Lekas v. Briley, 405 F.3d 602, 608 (7th Cir. 2005) (quoting Sandin v. Conner, 515 U.S. 472, 483-84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. Id. Disciplinary segregation can trigger due process protections. Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When deciding whether an incarcerated person is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." Id. If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. Id. at 697-98. At one end of the spectrum, "six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." Id. at 698 (quoting Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a

maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted and incarcerated individuals otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. Id. at 697 (citing Wilkinson v. Austin, 549 U.S. 209, 224 (2005)).

Once a liberty or property interest has been invoked, the court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an incarcerated person is provided (1) written notice of the charge against him twenty-four hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the incarcerated person. See Wolff v. McDonnell, 418 U.S. 539, 563-69 (1974); Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of Wolff be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." Black v. Lane, 22 F.3d 1395, 1402 (7th Cir. 1994).

The plaintiff has not stated a due process claim because he does not allege that his term of confinement in disciplinary segregation subjected him to conditions significantly harsher than the normal prison environment. Even if his segregation disposition implicated a liberty interest, the plaintiff has not

9

Case 2:24-cv-00071-PP   Filed 05/20/24   Page 9 of 14   Document 9

alleged that he was not afforded adequate procedural protections at his disciplinary hearing. The plaintiff references the Fifth and Eighth Amendments, but he has not alleged facts that implicate his rights under the Fifth or Eighth Amendment.

Because the plaintiff does not state a claim for violation of his constitutional rights, he has not stated a conspiracy claim because conspiracy is not an independent basis of liability in §1983 cases. See Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008). In addition, even if the plaintiff had stated a claim that the defendants violated his constitutional rights, he would not state a conspiracy claim because he has not pled any facts to support an inference that the defendants entered into an agreement to violate his constitutional rights. See Cooney v. Rossiter, 583 F.3d 967, 970–71 (7th Cir. 2009); Ryan v. Mary Immaculate Queen Center, 188 F.3d 857, 860 (7th Cir. 1999).

The amended complaint does not state a claim that the defendants violated the plaintiff's rights under federal law. But the court will give the plaintiff an opportunity to file a second amended complaint. If he does, he must include factual allegations that state a plausible claim for relief against any defendant whom he believes violated his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must use this form for his amended complaint. See Civil Local Rule 9(b) (E.D. Wis.). The plaintiff must list the case number for this case on the first page. He must write the word "Second" above the word Amended at the top of the first page. He must list all the defendants he wants to sue in the caption of the

amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The second amended complaint takes the place of the prior complaints and must be complete in itself; the plaintiff may not refer the court or other readers back to facts in the previous complaints.

When writing his second amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

### III. Plaintiff's Motion to Preserve Evidence (Dkt. No. 7)

The plaintiff states that he asked the secretary of Columbia Correctional Institution's security director to locate "video BWC [body-worn camera] and tier footage," and she said that videos were retained for ninety days. Id. The plaintiff states that the Department of Corrections' policy on body-worn cameras (DOC policy 306.16.10) does not include an allotted time for preservation of the videos. Id. He asks the court to order the defendants to

11

preserve the video. Id. The plaintiff does not explain what he believes is on the video and has not provided grounds for the court to order the defendants to preserve it. The court will deny the plaintiff's motion.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion to preserve evidence. Dkt. No. 7.

The court **CONCLUDES** that the plaintiff's amended complaint fails to state a claim. Dkt. No. 6.

The court **ORDERS** that the plaintiff may file a second amended complaint that complies with the instructions in this order. If the plaintiff chooses to file a second amended complaint, he must do so in time for the court to receive it by the end of the day on **June 21, 2024**. If the court receives a second amended complaint by the end of the day on June 21, 2024, the court will screen it as required by 28 U.S.C. §1915A. If the court does not receive either a second amended complaint or a request for more time to file one by the end of the day on June 21, 2024, the court will dismiss this case based on the plaintiff's failure to state a claim in his amended complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$347.34** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's

trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Columbia Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institutio, and Oshkosh Correctional Institution.

the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include with this order a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 20th day of May, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**