UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRED LEE DAVENPORT,

                    Plaintiff,

v.                                          Case No. 24-cv-71-pp

LT. LUKAS ROBERTSON, *et al.*,

                    Defendants.

**ORDER SCREENING SECOND AMENDED COMPLAINT (DKT. NO. 10) AND DISMISSING CASE**

Plaintiff Fred Lee Davenport, who is incarcerated at Columbia Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. The court screened the amended complaint and determined that it did not state a claim. Dkt. No. 9 at 12. The court gave the plaintiff an opportunity to file a second amended complaint and the plaintiff did so (Dkt. No. 10); this order screens that complaint.

**I.    Screening the Amended Complaint**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  Second Amended Complaint's Allegations

The plaintiff alleges that he works as a "jailhouse lawyer" and that another incarcerated individual enlisted his help to prepare an informal grievance challenging that individual's conditions of confinement. Dkt. No. 10 at ¶¶1-3. The plaintiff allegedly showed the grievance to defendant Officer Timothy Hong who "defer[red] it" to defendant Lukas Robertson, so the plaintiff gave it to Robertson. Id. at ¶¶4-5. Robertson allegedly issued the plaintiff a conduct report for the grievance. Id. at ¶6. The plaintiff states that Robertson "commits libel when maliciously defame [sic] plaintiff by adding violent, aggressive, and intimidating language to plaintiff's grievance." Id. at ¶7.

The plaintiff alleges that defendant Christopher Olsen reviewed the evidence and conduct report and approved it "though he sees it's a violation of 303.67(2) 'in the conduct report, the employee shall describe the facts . . . .'" Id. at ¶8. Defendant Security Director Ryan Blount also reviewed the evidence and approved the conduct report, even though he saw it was a violation of 303.67(2). Id. at ¶9. Blount allegedly offered a disposition of 210 days "D.S." (presumably, disciplinary segregation). Id. at ¶10.

The plaintiff alleges that after he contested the conduct report, Hong served the conduct report on him along with his due process rights. Id. at ¶11. Defendant Kevin Pitzen allegedly was the hearing officer along with defendants Natasha Radtke and Rebecca Gardener. Id. at ¶12. The plaintiff states that he

3

had his conduct report, the grievance, Hong and a statement from Robertson as witnesses and evidence at the hearing. Id. at ¶13. Pitzen allegedly did not allow the plaintiff to ask certain questions of approved witnesses, Hong allegedly lied on the record and Pitzen allegedly asked the plaintiff, "what makes you think I care about how a[n] inmate feels." Id. at ¶¶14-16. Defendant Radtke allegedly omitted Pitzen's inappropriate statement. Id. at ¶17. The plaintiff alleges that the hearing committee found him guilty of group resistance and petitions, and threats, and found him not guilty of soliciting an employee. Id. at ¶18. He allegedly was given "210 days DS adding A/C tracking." Id.

The plaintiff states that he appealed to the warden, challenging the evidence and procedural errors, but the decision was upheld. Id. at ¶19. The warden allegedly saw that the conduct report violated DOC 303.67(2) but "join[ed] in the collusion to deprive plaintiff of life, liberty and property by upholding the decision." Id. at ¶20.

The plaintiff alleges that he filed "an inmate complaint raising procedural errors." Id. at ¶21. Defendant Rodney Sedovic, the complaint examiner, allegedly recommended dismissal "due to no procedural errors being raised," which "was maliciously false." Id. at ¶22. The plaintiff states that defendant Deputy Warden Michael Glass dismissed the complaint, electronically signing his name and falsely identifying himself as the warden. Id. at ¶23. The plaintiff allegedly appealed to defendant Emily Davidson, the corrections complaint examiner, "raising same claims adding concerns that Michael Glass failing to

sign DOC-9 and was the topic of ICE but decided on it showing a due process violation then falsely identifying himself as 'the warden' on an official state document." Id. at ¶24. Davidson recommended dismissal of the appeal and defendant O'Donnell—with defendant Kevin Carr's authority—dismissed the complaint, aware that a proper investigation had not been conducted. Id. at ¶¶27-28.

The plaintiff alleges that this "accumulation of retaliation has caused plaintiff from filing grievances on behalf of other legally incompetent PIOCS[]" and that he was placed on "A/C" (presumably, administrative confinement) after completion of his "D.S. time." Id. at ¶¶29-30. The plaintiff states that he has been prevented from participating in certain religious services, has limited property, and cannot participate in leisure dayroom, meals and "mass recreation." Id. at ¶¶31-33. He alleges that he "suffered a deprivation of life, liberty, and property when receiving a malicious CR resulting in being subjugated to harsh living conditions of seg environment; lack of visitation rights, congregational prayer, mass movement, extra recreation, allowable property, and access to more law library." Id. at ¶35. The plaintiff says that "[d]ue to retaliation over informal grievance written for plaintiff['s] client he no longer is willing to file grievances for others suffering from staff misconduct." Id. at ¶36.

The plaintiff states that he "wasn't given fair due process of the law when issued a fabricated CR and then all aforementioned defendants unjustly violating 303 policy." Id. at ¶37. He states that the hearing committee lacked

5

evidence to back their decision because the conduct report contradicts what it is written for. Id. at ¶42.

The plaintiff states that the defendants conspired to violate his rights "when failing to perform their civil duties required by their position." Id. at ¶43. He states that defendant Robertson committed libel. Id. at ¶44. All defendants allegedly committed staff misconduct, "considered misconduct in public office, plain error, negligence, negligence infliction of emotional distress and conspiracy." Id. at ¶45. Defendants Hong and Robertson allegedly committed perjury. Id. at ¶46. All defendants allegedly violated the DOC 303 subjugating the plaintiff to cruel and unusual punishment. Id. at ¶47.

The plaintiff seeks damages and injunctive relief. Id. at 6.

C. Analysis

The court construes the plaintiff's complaint as alleging that the defendants conspired to retaliate against him because he wrote an informal grievance expressing concerns about the conditions of confinement of another incarcerated individual. He appears to allege that the retaliation included a fabricated conduct report and a disciplinary hearing at which he did not receive adequate due process. The plaintiff alleges that he was sentenced to 210 days' disciplinary segregation after he was found guilty of group resistance and petitions, and of threats. He says he was found not guilty of soliciting an employee. The plaintiff alleges that the defendants conspired to violate his rights when they failed to perform their civil duties.

6

To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez, 792 F.3d at 783 (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

Whether the plaintiff's informal grievance constituted speech protected by the First Amendment hinges on whether he "engaged in speech in a manner consistent with legitimate penological interests." Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010) (citing Bridges, 557 F.3d at 551). The plaintiff alleges only that the informal grievance concerned another incarcerated individual's conditions of confinement and that he (the plaintiff) received a conduct report because of the grievance. At this stage, the court will assume that the grievance the plaintiff allegedly wrote for another incarcerated individual qualifies as First Amendment-protected activity. The court also will assume that under the second factor of a retaliation claim, the plaintiff arguably suffered deprivations—a fabricated conduct report, an unfair due process hearing— likely to deter future activity. See Douglas v. Reeves, 964 F.3d 643, 646-47 (7th Cir. 2020) (quoting Surita v. Hyde, 665 F.3d 860, 878 (7th Cir. 2011) ("We apply an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity.")).

But the plaintiff has not alleged facts to support an inference that the informal grievance was a motivating factor for the defendants' actions. See Iqbal, 556 U.S. at 678. The plaintiff has not plausibly alleged that his allegedly protected activity was a motivating factor behind the defendants' conduct. See Bridges, 557 F.3d at 546. That is, he has not stated what leads him to believe that it was the protected activity that caused him to be treated the way he was. See Kaminski v. Elite Staffing, Inc., 23 F.4th 774, 777-78 (7th Cir. 2022). The amended complaint does not state a retaliation claim.

It is possible that the plaintiff is trying to allege that his due process rights were violated regarding his disciplinary hearing. An incarcerated individual challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) that he has a liberty or property interest that the state has interfered with; and (2) that the procedures he was afforded upon that deprivation were constitutionally deficient. Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007) (citing Rowe v. DeBruyn, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." Lekas v. Briley, 405 F.3d 602, 608 (7th Cir. 2005) (quoting Sandin v. Conner, 515 U.S. 472, 483-84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. Id. Disciplinary segregation can trigger

8

Case 2:24-cv-00071-PP    Filed 11/13/24    Page 8 of 13    Document 13

due process protections. Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When deciding whether an incarcerated person is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." Id. If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. Id. at 697-98. At one end of the spectrum, "six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." Id. at 698 (quoting Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted and incarcerated individuals otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. Id. at 697 (citing Wilkinson v. Austin, 549 U.S. 209, 224 (2005)).

Once a liberty or property interest has been invoked, the court looks to what process was due. The Seventh Circuit recently clarified that that incarcerated individuals "facing only disciplinary action like segregation, rather than disciplinary action affecting the length of their carceral sentence, like a reduction in good-time credit," are entitled to only "informal due process." Ealy v. Watson, 109 F.4th 958, 965-66 (7th Cir. 2024). "[A]n inmate who is facing

9

transfer to disciplinary segregation is entitled only to 'informal, nonadversarial due process,' which 'leave[s] substantial discretion and flexibility in the hands of the prison administrators." Id. at 966. "[I]nformal due process requires only that an inmate is provided (1) "notice of the reasons for the inmate's placement" in segregation and (2) "an opportunity to present his views," for instance, in a written statement or at a hearing. Id.

The plaintiff has not stated a due process claim because he does not allege that his 210-day (or seven-month) term of confinement in disciplinary segregation subjected him to conditions significantly harsher than the normal prison environment. He alleges that he "suffered a deprivation of life, liberty, and property when receiving a malicious CR resulting in being subjugated to harsh living conditions of seg environment; lack of visitation rights, congregational prayer, mass movement, extra recreation, allowable property, and access to more law library." Dkt. No. 10 at ¶35. The plaintiff is confined at Columbia Correctional Institution, which is a maximum-security institution. He has not sufficiently alleged that above-described conditions to which he says he was subjected in segregation deviate from the ordinary conditions at Columbia. See Kervin v. Barnes, 787 F.3d 833, 836 (7th Cir. 2015) (citing Marion v. Radtke, 641 F.3d 874, 876 (7th Cir. 2011)); see also Lisle v. Welborn, 933 F.3d 705, 721 (7th Cir. 2019).

Even if the plaintiff's segregation disposition implicated a liberty interest, he has not alleged that he was denied process. Because the plaintiff's disciplinary disposition included only segregation, he was entitled to the above-

10

Case 2:24-cv-00071-PP   Filed 11/13/24   Page 10 of 13   Document 13

described informal due process. In the second amended complaint, the plaintiff alleges that he received a copy of the conduct report, had a hearing, presented evidence, and was found guilty of two offenses and not guilty of one offense. In addition to appealing the conduct report of procedural errors, he filed an administrative grievance challenging procedural aspects of the hearing. This process satisfies the requirements of informal due process. The plaintiff has not stated a claim for denial of due process.

Because the plaintiff has not stated a claim for violation of his constitutional rights, he has not stated a conspiracy claim because conspiracy is not an independent basis of liability in §1983 cases. See Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008). Even if the plaintiff had stated a claim that the defendants violated his constitutional rights, he has not stated a conspiracy claim because he has not pled any facts to support an inference that the defendants entered into an agreement to violate his constitutional rights. See Cooney v. Rossiter, 583 F.3d 967, 970–71 (7th Cir. 2009); Ryan v. Mary Immaculate Queen Center, 188 F.3d 857, 860 (7th Cir. 1999).

## II. Conclusion

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the second amended complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this* court. See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for habeas corpus relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 13th day of November, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**